## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAURY ROBERT, on Behalf of Himself and All Others Similarly Situated, | ) ) Case No. ) |
| Plaintiff, | ) ) CLASS ACTION ) |
| vs. | ) JURY TRIAL DEMANDED ) ) |
| VERSUM MATERIALS, INC., SEIFOLLAH GHASEMI, JACQUES CROISETIÈRE, GUILLERMO NOVO, YI HYON PAIK, THOMAS J. RIORDAN, SUSAN C. SCHNABEL, and ALEJANDRO D. WOLFF, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Maury Robert ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

### NATURE AND SUMMARY OF THE ACTION

1.        This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Versum Materials, Inc. ("Versum" or the "Company") against Versum and the members of Versum's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Versum will be acquired by Entegris, Inc. ("Entegris") through

Entegris' wholly owned subsidiary Burgundy Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On January 28, 2019, Entegris and Versum issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated January 27, 2019 (the "Merger Agreement") to sell Versum to Entegris.  Under the terms of the Merger Agreement, each Versum stockholder will be entitled to receive 1.120 shares of Entegris common stock for each share of Versum common stock they own (the "Merger Consideration").  Based on the value of Entegris common stock on January 25, 2019, the implied value of the Merger Consideration was $35.08 per share.  Upon completion of the Proposed Transaction, Entegris and Versum stockholders will own approximately 52.5% and 47.5%, respectively, of the combined company.

3.      On February 28, 2019, Versum and Entegris filed a joint proxy statement/prospectus on Form S-4 (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Versum stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Versum's and Entegris' financial projections, relied upon by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Lazard; (iii) potential conflicts of interest faced by Lazard; and (iv) the background of the Proposed Transaction and the unsolicited proposal submitted by Merck KgaA ("Merck") on February 27, 2019 (the "Merck Proposal").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Versum stockholders

need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.      In short, unless remedied, Versum's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Versum.

9.      Defendant Versum is a Delaware corporation, with its principal executive offices located at 8555 South River Parkway, Tempe, Arizona 85284.  The Company is a global specialty materials company providing high-purity chemicals and gases, delivery systems,

services and materials expertise in the global semiconductor and display industries.  Versum's common stock trades on the New York Stock Exchange under the ticker symbol "VSM."

10.    Defendant Seifollah Ghasemi ("Ghasemi") has been Chairman of the Board and a director of the Company since Versum's spinoff from Air Products and Chemicals, Inc. ("Air Products") on October 1, 2016.

11.    Defendant Jacques Croisetière ("Croisetière") has been a director of the Company since October 1, 2016.

12.    Defendant Guillermo Novo ("Novo") has been President, CEO and a director of the Company since October 1, 2016.

13.    Defendant Yi Hyon Paik ("Paik") has been a director of the Company since October 1, 2016.

14.    Defendant Thomas J. Riordan ("Riordan") has been a director of the Company since October 1, 2016.

15.    Defendant Susan C. Schnabel ("Schnabel") has been a director of the Company since October 1, 2016.

16.    Defendant Alejandro D. Wolff ("Wolff") has been a director of the Company since October 1, 2016.

17.    Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.    Entegris is a Delaware corporation with its principal executive offices located at 29 Concord Road, Billerica, Massachusetts 01821.  Entegris is a leader in specialty chemicals and advanced materials solutions for the microelectronics industry and other high-tech industries.

Entegris' common stock trades on the NASDAQ Global Select Market under the ticker symbol "ENTG."

19.     Merger Sub is a Delaware corporation and wholly-owned subsidiary of Entegris.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Versum common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of January 25, 2019, there were approximately 135,144,839 shares of Company common stock outstanding.  All members of the Class may be identified from records maintained by Versum or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

        a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

        b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

27.     Versum is a global provider of innovative solutions to the semiconductor and display industries with expertise in the development, manufacturing, transportation, and handling of specialty materials.  Versum's business consists of two operating segments, (i) Materials and (ii) Delivery Systems and Services ("DS&S"), under which the Company manages its operation and assesses performance, as well as a third Corporate segment.

28.     The Company's Materials segment operates in two product categories: Advanced Materials and Process Materials.  Collectively, the Materials segment includes products such as specialty chemicals and materials utilized in the production of semiconductors and high-purity specialty gases used in the semiconductor manufacturing process.

29.     Versum's DS&S segment designs, manufactures, installs, operates and maintains chemical, gas and slurry delivery and distribution systems enabling the use of specialty gases and

chemicals that are delivered directly to Versum's customers' manufacturing tools.  Product development in the DS&S segment is enhanced through collaboration with the Company's original equipment manufacturing customers as well as with the Advanced Materials and Process Materials businesses of the Materials segment.

30.     On October 1, 2016, Versum, the former Electronic Materials business of Air Products, officially spun off from Air Products and began operations as an independent public company.  In the October 3, 2016 press release announcing the Company's spin-off, defendant Novo highlighted that Versum is a "focused pure play in the semiconductor industry with a strong portfolio and capabilities," participating in six of seven key semiconductor process steps.

31.     Following Versum's separation from Air Products, the Company has experienced strong financial growth and reported record results in 2018.

32.     For example, on May 2, 2018, Versum announced it had declared a quarterly cash dividend of $0.06 per share, a 20% increase from previous dividends of $0.05 per share.

33.     On May 8, 2018, Versum announced its fiscal second quarter 2018 financial results, reporting sales of $340.7 million, a 26% increase from the fiscal second quarter 2017, net income of $61.6 million, or $0.56 per diluted share, a $16.7 million increase from the fiscal second quarter 2017, and adjusted EBITDA of $109.9 million, up 26% from the fiscal second quarter 2017.  Defendant Novo commented on the positive results, stating:

> We are pleased to report strong results for our fiscal second quarter, which was highlighted by share gains leading to robust top line growth in both our Materials and DS&S segments. Materials volume grew double digits which underscores our ability to provide innovative solutions to customers through technology. Our focused offerings and positioning with key customers enabled us to enjoy growth in our DS&S segment which far outpaced the market.
>
> Going live on our own ERP system was a watershed moment for our Company, as it substantially marked the completion of our transition to a standalone entity. I am very thankful to our entire team who diligently worked to reach this milestone,

and we are encouraged by its early success. Looking forward we are excited to focus on executing the growth opportunities in front of us, and we are encouraged by our new business pipeline that has enabled us to increase our outlook for 2018.

34.     On August 7, 2018, the Company reported record revenue and earnings for its fiscal third quarter 2018.  Versum reported sales of $350 million, a 20% increase from the fiscal third quarter 2017, net income of $63.3 million, or $0.58 per diluted share, up $10.6 million from the fiscal third quarter 2017, and adjusted EBITDA of $116.8 million, a 20% increase from the fiscal third quarter 2017.  Defendant Novo is quoted as stating:

> We are pleased to report record revenue and earnings for our fiscal third quarter. Our diverse product portfolio again delivered twenty percent year-on-year top line growth and sequential margin improvement.
>
> Our end markets remain resilient and we continue to develop exciting technology and investment opportunities which we believe will produce above market growth and continued margin expansion in the coming years. Having completed the final steps of our separation from Air Products, our entire team is now focused on driving profitable future growth.

35.     The positive news for Versum stockholders continued as the Company announced a cash dividend of $0.08 per share on October 31, 2018, a 33% increase from previous dividends.

36.     Moreover, on November 6, 2018, Versum announced record fiscal year 2018 financial results, including sales of $1,372.3 million, a 22% increase from fiscal year 2017, net income of $197.5 million, or $1.80 per diluted share, and adjusted EBITDA of $445.4 million, up 20% from fiscal year 2017.  Defendant Novo highlighted the Company's financial success, stating:

> I am extremely proud of what our team accomplished during fiscal year 2018. Both of our business segments achieved strong results and we reported record sales and adjusted net income, up 22 percent and 23 percent, respectively. The fourth quarter represented our sixth consecutive record quarter for sales. Equally important, we made great progress in advancing our strategic priorities which we expect will sustain our organic growth momentum.

**The Sale Process**

37.     On December 8, 2018, defendant Novo and Bertrand Loy ("Loy"), Entegris' President and CEO, met in Tokyo, Japan.  During this meeting, defendant Novo raised the possibility of an all-stock merger of equals between Versum and Entegris.

38.     Following this meeting, defendant Novo and Loy spoke on two occasions to discuss subsequent potential meetings.

39.     On December 20, 2018, Loy contacted defendant Novo to express Entegris' interest in continuing to discuss a potential merger transaction.

40.     On January 3, 2019, the parties entered into a mutual non-disclosure agreement.

41.     The next day, defendants Novo and Ghasemi, Loy and Paul Olson, chairman of the Entegris board of directors, met to continue discussing a potential merger.  At the meeting, the parties discussed, among other things, that defendant Ghasemi would serve as chairman of the board of the combined company.

42.     At a January 12, 2019 Board meeting, representatives of Versum's senior management reviewed with the Board, management's view on the Company's financial projections, including macro forecasts, growth drivers and other assumptions, and including an update on first quarter performance for fiscal year 2019.

43.     On January 16, 2019, the Entegris board of directors authorized Loy to propose to defendants Novo and Ghasemi an exchange ratio of 1.097 Entegris shares per Versum share.

44.     The next day, Entegris' financial advisor provided Lazard with a summary of Entegris' proposed key terms, including defendant Ghasemi serving as chairman of the board of directors of the combined company and that the board would include nine members, with four to be designated by Versum, four to be designated by Entegris, and Loy as CEO of the combined

company.  Later that day, the parties agreed to an exchange ratio of 1.120 Entegris shares per Versum share.

45.    Throughout the remainder of January 2019, Entegris, Versum and their respective financial and legal advisors continued to conduct due diligence and negotiate the terms of the Merger Agreement.

46.    At a January 27, 2019 Board meeting, Lazard rendered its fairness opinion and the Board approved the Merger Agreement.  Later that day, the parties finalized and executed the Merger Agreement.

47.    On January 28, 2019, Versum and Entegris issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> BILLERICA, Mass. & TEMPE, Ariz.-- Jan. 28, 2019-- Entegris, Inc. (NASDAQ:ENTG), a leader in specialty chemicals and advanced materials solutions for the microelectronics industry, and Versum Materials, Inc. (NYSE:VSM), a leading specialty materials supplier to the semiconductor industry, today announced that they have agreed to combine in a merger of equals. The combined company will be a premier specialty materials company for the semiconductor and other high-tech industries.
>
> Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Versum Materials stockholders will receive 1.120 shares of Entegris for each existing Versum Materials share. Upon completion of the merger, Entegris stockholders will own 52.5 percent and Versum Materials stockholders will own 47.5 percent of the combined company1. The combined company will have a pro forma enterprise value of approximately $9 billion, based on the closing prices of Entegris and Versum Materials on January 25, 2019, and approximately $3 billion in revenue and approximately $1 billion in Adjusted EBITDA on a pro forma basis for calendar year 20182.
>
> The combined company will retain the Entegris name and will be headquartered in Billerica, Massachusetts, and will maintain a strong operational presence in Tempe, Arizona.
>
> Upon closing of the transaction, Entegris CEO Bertrand Loy will serve as Chief Executive Officer, Entegris CFO Greg Graves will serve as Chief Financial Officer, and Versum Materials General Counsel Michael Valente will serve as General Counsel of the combined company, supported by a highly experienced

and proven leadership team that reflects the strengths and capabilities of both companies.

The combined company's Board of Directors will have nine members, consisting of four directors from the existing Versum Materials board, including Seifi Ghasemi, Chairman of the Versum Materials Board, who will serve as Chairman of the Board of the combined company, and five directors from the existing Entegris Board, including Bertrand Loy.

Entegris President and Chief Executive Officer, Bertrand Loy said, "We are excited to combine with Versum Materials to create a premier specialty materials company for the semiconductor and other high-tech industries. The combined company will be ideally positioned to more effectively help our customers achieve higher yields and new levels of performance and reliability, and together, we will be well positioned to take advantage of long-term secular semiconductor growth, and to tackle new industry process challenges. I have great respect for the Versum Materials team and look forward to joining forces as we embark on this next chapter and create new value for our stockholders, employees and customers."

Versum Materials President and Chief Executive Officer, Guillermo Novo said, "We could not ask for a better partner in Entegris. This merger will create greater benefits and growth opportunities than either company could have achieved on its own. It dramatically accelerates our goal of portfolio diversification – creating an end-to-end materials solutions provider across the entire semiconductor manufacturing process. With enhanced global scale and world class technical expertise, we'll be poised to drive further innovation and support investments across our technology, infrastructure, and additional capabilities – enabling us both to better serve our customers and provide expanded opportunities for our employees."

48.    Subsequently, on February 27, 2019, Merck submitted a proposal to acquire Versum for $48.00 per share in cash, reflecting an enterprise value for Versum of approximately $6 billion.  The Merck Proposal represents a premium of 15.9% to the value of Versum shares as of February 27, 2019 and a premium of 51.7% to the undisturbed trading price per Versum share on the trading day prior to the announcement of the Proposed Transaction.

49.    The next day, the Company issued a press release announcing it had adopted a stockholder rights plan, pursuant to which if a person or group becomes the beneficial owner of 12.5% or more of the Company's outstanding common stock, all other stockholders will be

entitled to purchase a number of shares of Versum common stock at a reduced price. The February 28, 2019 press release states:

> Versum Materials, Inc. (NYSE: VSM), a leading specialty materials supplier to the semiconductor industry, today announced that its Board has adopted a limited duration Shareholder Rights Plan, details of which will be contained in a Form 8K to be filed with the U.S. Securities and Exchange Commission.
>
> The Rights Plan, which was adopted by the Board following evaluation and consultation with the Company's advisors, is similar to plans adopted by numerous publicly traded companies. The Rights Plan is intended to promote the fair and equal treatment of all Versum shareholders and ensure that no person or group can gain control of, or influence over, Versum, through open market accumulations or other tactics potentially disadvantaging the interest of all shareholders.
>
> Under the Rights Plan, the Rights will become exercisable if a person or group becomes the beneficial owner of 12.5% or more of the Company's outstanding Common Stock. In the event that the Rights become exercisable due to the triggering ownership threshold being crossed, each Right will entitle its holder to purchase, at the Right's exercise price, a number of shares of Common Stock or equivalent securities having a market value at that time of twice the Right's exercise price. Rights held by the triggering entity will become void and will not be exercisable to purchase shares at the reduced purchase price. The Board of Directors will, in general, be entitled to redeem the Rights at $0.001 per Right at any time before the triggering ownership threshold is crossed.
>
> The Rights Plan may be amended, redeemed or terminated by the Versum Board of Directors at any time prior to being triggered or its expiration on August 30, 2019. The Rights Plan exempts any person or group currently owning 12.5% or more of the Company's outstanding Common Stock. However, the Rights will be exercisable if a person or group that already owns 12.5% or more of the Company's outstanding Common Stock acquires any additional shares after the time of announcement of the Rights Plan.
>
> The Rights Plan does not prevent any action that the Board determines to be in the best interest of the Company and its shareholders, and is structured such that it will not be triggered by the definitive merger agreement to combine the Company with Entegris, Inc., announced on January 28, 2019.

50.     On March 1, 2019, the Company announced that the Board rejected the Merck Proposal and concluded that the Merck Proposal does not constitute a superior proposal.

51.     On March 5, 2019, Merck issued an open letter to Versum stockholders, followed by a Proxy Statement on Form PREC14A on March 12, 2019, urging Versum stockholders to vote against the Proposed Transaction.  The letter states:

Dear Fellow Versum Shareholders:

We are disappointed that the Versum Board of Directors has rejected without explanation our superior proposal to acquire all of the outstanding common stock of Versum for $48 in cash per share (our "Proposal"). Further, our offer to engage directly with Versum to understand the rationale for the Versum Board's determination has not been accepted. We urge you to let the Versum Board know that Versum shareholders will not support the Entegris acquisition in light of our Proposal, which is unquestionably superior.

**The market has spoken with respect to the value of our Proposal relative to the Entegris acquisition**

Our Proposal reflects a 51.7% premium to Versum's unaffected price and a 17.1% premium to the current market value of the Entegris stock that Versum shareholders would receive in the Entegris acquisition. Since the time our Proposal was announced, 35.6 million Versum shares have traded (32.6% of the total number of Versum basic shares outstanding) in just four trading days at a volume weighted average price of $48.58, an 18.5% premium to the current implied value of the Entegris stock consideration. Further, the premium valuation reflected in our Proposal is certain and immediate, without any of the significant ongoing integration, operational or market risks reflected in the value of the Entegris stock consideration and without the need for the achievement of synergies.

The market has overwhelmingly expressed a preference for our Proposal.

**The published financial analysis of Lazard – Versum's own financial advisor – supports our view that our Proposal is superior to the Entegris acquisition**

The analysis of Versum's own financial advisor – Lazard – supports our view that our Proposal is superior, both standalone and relative to the Entegris acquisition. . . .
The Versum Board appears to have disregarded the valuation analysis of its own financial advisor in rejecting our Proposal.

**The Versum Board has not engaged in a process to maximize shareholder value**

The background of the merger section of the Proxy Statement indicates that discussions began between Versum and Entegris in December 2018. Less than

two months later, Versum announced a transaction with Entegris without conducting a market check to determine what alternatives might be potentially available to Versum's shareholders. The final exchange ratio reflected only a 10.8% premium to the market value of Versum's stock at the time of the announcement. Further, during the course of the negotiation, the final exchange ratio reflected only a 2.1% increase from the exchange ratio initially offered by Entegris. After our Proposal was delivered, the Versum Board never contacted us to discuss our Proposal, implemented a poison pill and quickly rejected our Proposal.

**These actions do not reflect a desire to maximize shareholder value. Our Proposal offers more opportunity for Versum's employees**

While the transaction with Entegris is described as a "merger of equals", there appears to be nothing equal about the treatment of Versum's employees relative to those of Entegris. Entegris has already announced its intention to operate the combined business from its headquarters in Billerica, MA, more than 2,500 miles away from Tempe.

At Merck KGaA, Darmstadt, Germany, people have always been and will continue to be at the center of everything we do. We already have a strong footprint in the U.S. and a track record as a top employer. Over the past decade, the company invested some $24bn in the U.S. through acquisitions alone, including the successful acquisitions of Millipore in 2010 and Sigma-Aldrich in 2015.

Our intention is to maintain Versum's Tempe site as the major hub for the combined electronic materials business in the U.S., complementing our strong commitment to this important market. Versum employees will become an integral part of a leading electronic materials business and will benefit from new and exciting development opportunities within a truly global science and technology company.

**We are fully committed to pursuing our Proposal**

The Versum Board should consider the best interests of its shareholders and engage with us.

**Merck KGaA, Darmstadt, Germany's proposal is clearly superior to the Entegris acquisition.**
**We know that Versum shareholders agree with us.**
**Tell the Versum Board how you feel.**

Emphasis in original.

52.     On March 8, 2019, the Company and Entegris issued an open letter to Versum

and Entegris stockholders, reiterating their support for the Proposed Transaction, stating, in pertinent part:

> Dear Versum and Entegris Shareholders:
>
> We are writing to you on behalf of the Versum Materials and Entegris management teams and Boards of Directors regarding the merger of equals between our two companies we announced on January 28, 2019. We believe it is important to set the record straight about the compelling strategic benefits the combined company will have as a premier specialty materials company and reiterate our confidence in the significant shareholder value we will deliver as one company. Key points are as follows:
>
> - **The Entegris-Versum transaction is a true, all-stock, remain-invested, merger of equals that has tremendous upside value-creation potential.** In a combination with Entegris, Versum shareholders will achieve significant value creation from the strength of the combined company, outsized revenue growth and cash flow generation, and enhanced capital returns. Given the leadership position the combined company will hold in the semiconductor and specialty chemicals industry, the combined company will retain the ability to pursue a full range of additional value-creating strategic options going forward.
>
> - **There is significant cost, revenue and tax synergy potential within the proposed combination of Entegris and Versum.** The integration teams of both companies have worked closely over the past month, and as a result of those detailed efforts, the combined company now expects to achieve more than $125 million in cost synergies from SG&A, such as facilities optimization, administrative functions and rationalization of public company costs, as well as efficiencies in commercial operations, manufacturing, logistics and procurement. Given the strength of the two companies, the enhanced offerings and the positive receptivity from customers, over the next three years we also expect revenue synergies to contribute at least $50 million of additional EBITDA annually. Revenue synergies will result initially from cross-selling across major customers and geographies and eventually through the opportunity to develop co-optimized products and solutions. In addition, the combination is expected to generate tax synergies reflecting the combined company's ability to benefit from Entegris' more efficient tax structure.
>
> - **The combined company will have a strong balance sheet and will generate significant excess free cash flow that will provide the flexibility necessary to allow for significant return of capital to shareholders, among other initiatives.** We expect the combined company to have significant debt capacity with gross leverage at closing

of only approximately 1.7x.

- **Importantly, both companies have experienced management teams with strong track records of successfully integrating mergers, achieving synergies and creating shareholder value.** At Entegris, Bertrand Loy has led the successful integration of multiple acquisitions, including Mykrolis, POCO Graphite, and ATMI. Seifi Ghasemi has a proven track record of delivering shareholder value at multiple companies, including Rockwood Holdings and Air Products. We are confident the combined company will meet or exceed the newly stated cost synergy goals as well as realize the other benefits of this merger.

- **The combined company will deliver unique opportunity for all stakeholders.** Together Entegris and Versum will be able to provide an end-to-end portfolio of solutions for the entire semiconductor process and as such, customers will benefit from enhanced product breadth and depth, unwavering commitment to R&D, improved technical expertise as well as a much broader global scale.With the most talented team in the industry we will be able to achieve faster time to solutions and better meet the needs of our customers. With a truly equal combination of the Board of Directors and management team of both Entegris and Versum, the combined company will be the ideal home for Versum's employees. In fact, the combined company has already committed to creating opportunities for employees of the combined company and will maintain a strong operational presence in Tempe, Arizona – reinforcing that this transaction is a true merger of equals.

We remain committed to our strategic merger. As we have outlined above, we are confident that it is a highly complementary and strategically compelling transaction that will offer substantial value to shareholders of both companies through the attractive growth profile, potential for capital deployment, a diversified portfolio and enhanced scale.

Emphasis in original.

### Insiders' Interests in the Proposed Transaction

53.    Versum insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Versum.

54.    Notably, certain Company insiders have secured positions for themselves with the

combined company upon consummation of the Proposed Transaction. Defendant Ghasemi will continue as Chairman and three additional Board members will continue as directors of the combined company.

55.    Versum insiders also stand to reap substantial financial benefits for securing the deal with Entegris. For example, under the Versum Deferred Compensation Plan ("DCP"), the Company will pay to each of Versum's executive officers a cash payment of such participant's accrued account balance. The following table sets forth the cash payments Versum's executive officers are set to receive in connection with the DCP:

| Name | DCP Account Balance ($) |
|------|------------------------:|
| Guillermo Novo | 350,273 |
| George G. Bitto | 1,240,246 |
| Michael W. Valente | 213,940 |
| Edward C. Shober | 239,131 |
| Patrick F. Loughlin | 197,049 |
| All Other Executive Officers | 144,920 |

56.    Moreover, if they are terminated in connection with the Proposed Transaction, defendant Novo and the Company's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension / NQDC ($)[3] | Perquisites / Benefits ($)[4] | Tax Reimbursement ($)[5] | Other ($) | Total ($) |
|------|------|------|------|------|------|------|------|
| Guillermo Novo | 7,092,844 | 13,671,698 | — | 52,103 | — | — | 20,816,645 |
| George G. Bitto | 2,611,004 | 5,124,544 | — | 52,103 | — | — | 7,787,651 |
| Michael W. Valente | 1,942,356 | 3,770,910 | — | 52,103 | — | — | 5,765,369 |
| Edward C. Shober | 1,096,007 | 2,227,266 | — | 42,103 | — | — | 3,365,376 |
| Patrick F. Loughlin | — | — | — | — | — | — | — |

## The Registration Statement Contains Material Misstatements or Omissions

57.    Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Versum's stockholders. The Registration Statement

misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

58.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Versum's and Entegris' financial projections, relied upon by the Company's financial advisor, Lazard, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Lazard; (iii) potential conflicts of interest faced by Lazard; and (iv) the background of the Proposed Transaction and the Merck Proposal.  Accordingly, Versum stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Versum's and Entegris' Financial Projections***

59.     The Registration Statement omits material information regarding the Company's and Entegris' financial projections provided or approved by Versum's management and relied upon by Lazard for its analyses.

60.     For example, in connection with Lazard's *Discounted Cash Flow Analysis ("DCF")* of Versum, the Registration Statement sets forth:

> Lazard performed a discounted cash flow analysis of Versum to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that Versum projected to generate through 2023 based on the projections provided by Versum management and extrapolated by Lazard based on discussions with, and guidance from, Versum management and approved for Lazard's use by Versum management.

Registration Statement at 105.  Similarly, in connection with Lazard's *DCF* of Entegris, the Registration Statement sets forth:

> Lazard performed a discounted cash flow analysis of Entegris to calculate the estimated present value of the standalone unlevered, after-tax free cash flows that

> Entegris projected to generate through 2023 based on the projections provided by Entegris management and extrapolated by Lazard based on discussions with, and guidance from, Versum management and approved for Lazard's use by Versum management.

*Id*.  The Registration Statement, however, fails to set forth each of Versum's and Entegris' unlevered, after-tax free cash flows ("UFCFs") that each company is projected to generate through 2023 utilized by Lazard in its DCF of each company, as well as the definition of each of Versum's and Entegris' UFCFs, and the line items underlying each company's UFCFs.

61.     The omission of this information renders the statements in the "Versum Unaudited Financial Projections," "Entegris Unaudited Financial Projections," and "Opinion of Versum's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Lazard's Financial Analyses***

62.     The Registration Statement describes Lazard's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Lazard's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Versum's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Versum's stockholders.

63.     With respect to Lazard's *DCF* of Versum, the Registration Statement fails to disclose: (i) the UFCFs that Versum is projected to generate through 2023 and all underlying line items; (ii) the financial metric Lazard applied perpetual growth rates to in order to derive the terminal values for Versum; (iii) the estimated terminal values for Versum; (iv) quantification of

the inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; and (v) Versum's net debt and noncontrolling interest as of December 31, 2018.

64.    With respect to Lazard's *DCF* of Entegris, the Registration Statement fails to disclose: (i) the UFCFs that Entegris is projected to generate through 2023 and all underlying line items; (ii) the financial metric Lazard applied perpetual growth rates to in order to derive the terminal values for Entegris; (iii) the estimated terminal values for Entegris; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; (v) Entegris' net debt and noncontrolling interest as of December 31, 2018; and (vi) Entegris' cash balance calculated pro forma for its share repurchases between January 1, 2019 and January 18, 2019.

65.    Without such undisclosed information, Versum stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

66.    The omission of this information renders the statements in the "Opinion of Versum's Financial Advisor," "Versum Unaudited Financial Projections," and "Entegris Unaudited Financial Projections" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Lazard's Potential Conflicts of Interest***

67.    Further, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Lazard.

68.    The Registration Statement states that "Lazard has in the past provided certain investment banking services to Versum, for which it has received compensation, including, during the past two years, having advised Versum with respect to corporate preparedness matters."  *Id.* at 109.  The Registration Statement, however, fails to disclose the amount of compensation Lazard received for the past services it provided to the Company and its affiliates.

69.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

70.    The omission of this information renders the statements in the "Opinion of Versum's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction and the Merck Proposal***

71.    The Registration Statement also fails to disclose material information concerning the background of the Proposed Transaction and the Merck Proposal.

72.    For example, the Registration Statement sets forth:

On February 27, 2019, the Versum board of directors received an unsolicited proposal from Merck KGaA, Darmstadt, Germany to acquire Versum for $48.00 per share in cash, which is referred to as the Merck proposal. Later that morning, Versum issued a press release that acknowledged receipt of the Merck proposal and stated that Versum continues to believe in the strategic and financial rationale of the proposed merger of equals with Entegris and that the Versum board of directors intends to thoroughly review the Merck proposal consistent with its fiduciary duties. On February 27, 2019, the Versum board of directors met telephonically, together with members of Versum's senior management and representatives of Lazard and Simpson Thacher, to discuss next steps in connection with the review of the Merck proposal.

*Id.* at 82.  Two days later, Versum issued a press release announcing it had rejected the Merck Proposal, finding it "is not a superior proposal."  Yet, the Registration Statement fails to set forth

the specific reasons the Board determined that the Merck Proposal does not constitute a superior proposal to the Proposed Transaction, and whether this was a unanimous decision by the Board. The Registration Statement further fails to disclose if the Board considered whether the Merck Proposal "could reasonably be expected to result in a Superior Proposal" under Section 7.2(b) of the Merger Agreement, and, if so, its basis for determining why not.

73.    The Registration Statement further fails to disclose whether the Board unanimously approved the adoption of the stockholder rights plan that the Company announced on February 28, 2019.

74.    In addition, the Registration Statement sets forth:

> In January 2019, Versum's management and Entegris' management both independently and collaboratively prepared and provided to their respective boards of directors and to their respective financial advisors certain estimates of annual cost synergies estimated to be potentially realizable by the combined company within 12 months after closing. The estimated synergies include approximately $75 million of annual gross pre-tax cost synergies estimated to be potentially realizable within 12 months after closing. The estimated synergies assumed that the expected benefits of the merger would be realized, including that no restrictions, terms or other conditions would be imposed in connection with the receipt of any necessary governmental, regulatory or other approvals or consents in connection with the consummation of the merger. In addition, the analysis for estimated synergies assumes an aggregate pre-tax cash investment of approximately $60-75 million (excluding transaction related costs and change in control related payments that may be payable) to achieve the estimated synergies, with cost savings to come primarily from general and administrative expenses and supply chain (manufacturing, procurement and logistics), commercial operations and research and development rationalization.

*Id.* at 115.   The Registration Statement, however, fails to disclose Versum's and Entegris' management's basis for and assumptions underlying the $75 million in estimated synergies the combined company expects to achieve.   Critically, following the Board's rejection of the Merck Proposal, Versum and Entegris touted in their joint March 8, 2018 open letter to shareholders

that the combined company expects to achieve $125 million in cost synergies, a $50 increase from the synergies Versum and Entegris expected to achieve in January 2019.

75.    The omission of this information renders the statements in the "Background of the Merger," "Recommendation of the Versum Board of Directors; Versum's Reasons for the Merger," and "Certain Estimated Synergies" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

76.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

77.    Plaintiff repeats all previous allegations as if set forth in full.

78.    During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

79.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It

misrepresented and/or omitted material facts, including material information about the financial projections utilized by the Company's financial advisor in connection with its financial analyses, the financial analyses performed by the Company's financial advisor, potential conflicts of interest faced by the Company's financial advisor, and the background of the Proposed Transaction and the Merck Proposal.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

80.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

81.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

82.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

83.     Plaintiff repeats all previous allegations as if set forth in full.

84.     The Individual Defendants acted as controlling persons of Versum within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Versum, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

85.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

86.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Registration Statement.

87.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

88.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

89.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.   By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Versum's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Versum, and against defendants, as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Versum stockholders;

C.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 14, 2019

O'KELLY ERNST & JOYCE, LLC

By  */s/ Ryan M. Ernst*
Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel.: (302) 778-4000
Email: rernst@oelegal.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*